**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0776n.06

No. 11-3826

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 18, 2012**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ROMERO MINOR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

PER CURIAM.  Romero Minor appeals his sixty-nine-month sentence for wire fraud, specifically challenging the district court's determination of the amount of loss resulting from his offenses.  For the reasons set forth below, we affirm.

Minor pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and forty-eight counts of wire fraud in violation of 18 U.S.C. § 1343.  These charges arose from a mortgage fraud scheme in which Minor recruited investors/straw buyers to purchase houses, directed the submission of mortgage loan applications containing false information to lenders to secure loans to purchase the properties, obtained inflated appraisals for the properties, and kept the excess funds created by the inflated appraisals, using a portion to make kickback payments to the investors/straw buyers and his co-conspirators.

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

According to the plea agreement, the parties were unable to agree on a guidelines calculation because of their differing views as to the amount of loss attributable to Minor under USSG § 2B1.1(b)(1). In the plea agreement, the government took the position that the loss in the case exceeded $1,000,000, resulting in a 16-level increase to the base offense level; Minor reserved the right to argue against that calculation.

The presentence report prepared by the probation office included a chart showing the forty-eight properties involved in the conspiracy and the corresponding loss amounts. The chart presented three different methods for calculating the loss sustained by the victim lenders. Using the lowest loss total, $1,311,672.51, the presentence report increased Minor's base offense level by 16 levels because the amount of loss exceeded $1,000,000 but was less than $2,500,000. *See* USSG § 2B1.1(b)(1)(I). Minor filed objections to the presentence report's loss calculation.

At sentencing, the district court heard the arguments of counsel and the testimony of FBI Special Agent Tom Donnelly regarding the loss calculation. The district court overruled Minor's objections, and determined that the loss involved in the case exceeded $1,000,000, specifically amounting to $1,311,672.51. Applying the corresponding 16-level increase, the district court calculated Minor's guidelines range as sixty-three to seventy-eight months. The district court sentenced Minor to the statutory maximum of sixty months on the conspiracy count and sixty-nine months on the forty-eight wire fraud counts, all to run concurrently.

This timely appeal followed. Minor raises two issues regarding the loss calculation: (1) the government's reliance on a chart to establish the loss calculation violated his constitutional right of confrontation where the plea agreement reserved his right to argue loss at sentencing and (2) the district court improperly applied USSG § 2B1.1 in determining "reasonably foreseeable pecuniary

harm" where the government failed to present any evidence that he could have reasonably foreseen the crash of the real estate market or the practice by lenders of reselling mortgages.

We review de novo Minor's claim that his rights under the Confrontation Clause were violated. *United States v. Katzopoulos*, 437 F.3d 569, 573 (6th Cir. 2006). Relying on the Supreme Court's recent line of cases addressing the right of confrontation, *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Crawford v. Washington*, 541 U.S. 36 (2004), Minor argues that the district court should have required the production of live witnesses and admissible documents to establish loss. We have repeatedly held, post-*Crawford*, that the Confrontation Clause does not apply in sentencing proceedings. *See United States v. Paull*, 551 F.3d 516, 527-28 (6th Cir. 2009); *Katzopoulos*, 437 F.3d at 575-76; *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005). Minor contends that the plea agreement's reservation of his right to argue loss at sentencing excepts his case from the general rule that confrontation rights do not apply at sentencing. But if that were the case, Minor's "exception" would swallow the rule. It implies that a defendant sentenced *without* a plea agreement, who therefore retains the ability to raise *any* relevant sentencing issue, would also have confrontation rights. In any case, regardless of any confrontation rights, one of the agents who prepared the loss calculation chart testified at Minor's sentencing hearing and was subject to cross-examination.

We review de novo the district court's method of calculating loss for purposes of USSG § 2B1.1(b)(1). *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006). "[T]he district court is to determine the amount of loss by a preponderance of the evidence, and the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir. 2004). The application notes under USSG § 2B1.1 provide that the district court "need

only make a reasonable estimate of the loss." USSG § 2B1.1, comment. (n.3(C)). Because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence," the district court's "loss determination is entitled to appropriate deference." *Id*.

Under USSG § 2B1.1's application notes, loss generally is "the greater of actual loss or intended loss." *Id*. comment. (n.3(A)). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," which in turn is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id*. comment. (n.3(A)(i), (iv)). In a case involving collateral, the defendant is entitled to a credit against loss in "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." *Id*. comment. (n.3(E)(ii)).

Here, the district court calculated the loss resulting from Minor's offenses by taking the mortgage loan amount and subtracting the fair market value of the collateral at the time of sentencing, which was determined by using the higher of either average neighborhood sales or average neighborhood county tax appraisals. Using the fair market value rather than the amount that the lenders recovered through foreclosure sales benefitted Minor; crediting Minor with the recovery from foreclosure sales would have resulted in a loss calculation in excess of $2,500,000 and an additional 2-level increase to his base offense level.

Minor contends that he could not have reasonably foreseen the real estate market crash and the resulting significant reduction in the fair market value of the properties at issue. Unlike the application note regarding the *determination* of loss, the application note regarding *credits* against loss does not speak in terms of foreseeability. *Id*. comment. (n.3(A), (E)). The sentencing

guidelines, therefore, require foreseeability of the loss of the unpaid principal, but do not require foreseeability with respect to the future value of the collateral. *See United States v. Turk*, 626 F.3d 743, 749-50 (2d Cir. 2010).

Minor also argues that he could not have reasonably foreseen that lenders would resell the mortgages at a profit. But we agree with the district court that although whether the lender's resold the mortgages at a profit may be relevant to restitution, it is not relevant to determining loss. The "reasonably foreseeable pecuniary harm" in this case is the amount of the mortgage loans.

For the foregoing reasons, we AFFIRM Minor's sentence.